IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EDDIE BARTIE,                          §
                                       §
            Petitioner,                §
                                       §
VS.                                    §          CIVIL ACTION NO. H-04-0864
                                       §
DOUGLAS DRETKE,                        §
                                       §
            Respondent.                §

## MEMORANDUM AND OPINION

Petitioner, Eddie Bartie, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2001 state felony conviction for aggravated assault. Respondent filed a motion for summary judgment, (Docket Entry No. 7), with a copy of the state court record. Bartie filed a response. (Docket Entry No. 11). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

## I.    Background

After a jury trial, Bartie was convicted of the felony offense of aggravated assault on his estranged wife, Sandra Bartie. (Cause Number 838267). The jury found true one enhancement paragraph alleging a prior conviction for attempted

murder.  (Cause Number F-84-71431-NV).  On January 4, 2001, the jury sentenced Bartie to a sixty-year term of imprisonment and imposed a $10,000 fine.  The evidence included the testimony of an eyewitness to the shooting and to Bartie's confession.  At trial, Officer Henderson of the Houston Police Department testified that on August 18, 1999, he responded to a shooting at a home in the southeast part of Harris County.  Officer Henderson observed a black female in the hallway with gunshot wounds in her right cheek, forearm, and left hand.  (Reporter's Record, Vol. III, p. 6).  Officer Henderson collected five spent bullet casings on the kitchen floor. (*Id*. at 7).

Officer Wood also responded to the shooting and took pictures of the crime scene.  (Reporter's Record, Vol. III, p. 14).  Officer Wood described the photographs showing bullet holes in cabinets, walls, and doors in the kitchen.  (Reporter's Record, Vol. III, pp. 24-26).  He also described the blood patterns in the hallway.

Darrell Stein, a criminalist at the Houston Police Department, conducted a ballistics examination of the casings recovered at the scene.  (Reporter's Record, Vol. III, pp. 34-35).  Stein testified that all of the bullets were fired from a .38 caliber gun. (*Id*. at 37-39).

Sandra Bartie testified that she was temporarily living with her mother on August 18, 1999.  She did not recall the shooting.  She was hospitalized for two weeks

after the shooting, receiving treatment for her wounds.  (Reporter's Record, Vol. III, p. 43).

Ella Chatman, Sandra Bartie's mother, testified that on August 18, 1999, she answered a knock at the door and saw Bartie, who began shooting at her daughter. (Reporter's Record, Vol. III, p. 52).  Chatman asked Bartie not to shoot her daughter; Bartie ignored her and shot Sandra Bartie several times.  (*Id*. at 53).

Leslie Holman testified that she was a friend of Bartie but had not seen him for approximately one year before August 18, 1999.  Bartie came to her house in Onalaska, Texas, close to midnight on August 18.  (Reporter's Record, Vol. III, pp. 59, 61).  Bartie told Holman that he had shot his wife and that she was probably dead because he had shot her five or six times.  (*Id*. at 63).  Holman called the police.  (*Id*. at 63-64).

The First Court of Appeals of Texas affirmed Bartie's conviction on June 13, 2002.  The Texas Court of Criminal Appeals struck Bartie's petition for discretionary review for noncompliance on December 4, 2002.  Bartie filed an application for postconviction relief on July 31, 2001.  The Texas Court of Criminal Appeals dismissed the application on November 21, 2001 because the direct appeal was pending.  *Ex parte Bartie,* Application No. 50,777-01 at cover.  Bartie filed a second application for state habeas corpus relief on June 10, 2003, which the Texas Court of

Criminal Appeals denied without a hearing or written order, on findings of the trial court, on February 18, 2004.  *Ex parte Bartie,* Application No. 50,777-05 at cover.

On March 3, 2004, this court received Bartie's federal petition.  Bartie contends that his conviction is void for the following reasons:

(1)     Counsel rendered ineffective assistance at trial by failing to:

    A.     investigate and object to evidence of a prior conviction used for enhancement;

    B.     object to or preserve error regarding the State's jury argument constituting a comment on his failure to testify; and

    C.     object to or preserve error regarding the State's voir dire.

(2)     The guilty plea in the attempted murder case, Cause Number F-84-71431-NV, which was used for enhancement, was involuntary and unknowing.

(3)     Counsel rendered ineffective assistance in Cause Number F-84-71431-NV.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8E).

Respondent argues that claims two and three are procedurally barred. Alternatively, respondent argues that Bartie is not entitled to habeas relief on any of his claims.  This court considers these arguments and Bartie's responses.

## II.     The Applicable Legal Standards

Bartie's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

Under the AEDPA, the substantive evidentiary burden differs depending on whether the issue is one of law, fact, or both.  *See Drinkard,* 97 F.3d at 767-68.  The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)

> (1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at

1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).  Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Bartie is a *pro se* petitioner.  In this circuit, *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings filed by lawyers.  *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir.

1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court broadly interprets Bartie's state and federal habeas petitions.  *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.    The Claim of Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that petitioner suffered prejudice as a result.  *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v. Cain,* 246 F.3d 471, 477 (5th Cir. 2001).  The district court may dispose of a claim if counsel either rendered reasonably effective assistance or no prejudice can be shown.  A court evaluating a claim of ineffective assistance need not address the reasonableness component first.  If a petitioner fails to make one of the required showings, the court need not address the other.  *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993).  If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed."

*Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 691.

Bartie asserts that his trial counsel, Tyrone Moncriffe, rendered ineffective assistance at trial in three respects. The state habeas court found that the facts asserted in the affidavit Moncriffe filed were true and that the totality of the representation Bartie received amounted to reasonably effective assistance of counsel. *Ex parte Bartie,* Application No. 50,770-05 at 41. Bartie argues that the state habeas court's findings of fact should not be accorded a presumption of correctness. (Docket Entry No. 10, Petitioner's Response, p. 2). Bartie complains that the state habeas court did not conduct an evidentiary hearing. The state habeas court was not the same as the trial court; Judge McSpadden presided over Bartie's trial, while Judge Johnson conducted the state habeas review.

The mere fact that the state court dismissed the habeas petition on the basis of affidavits, without granting an evidentiary hearing, does not disturb the presumption

of correctness under section 2254(d).  The Fifth Circuit has consistently held that a state court need not hold an evidentiary hearing; to the contrary, findings of fact based exclusively on affidavits are generally sufficient to warrant the presumption.  *See May v. Collins,* 955 F.2d 299, 309-15 (5th Cir. 1992); *see also Sawyers v. Collins*, 986 F.2d 1493, 1504-05 (5th Cir. 1993)(affording presumption of correctness to factual findings rendered solely on the basis of affidavits); *Carter v. Collins,* 918 F.2d 1198, 1202 (5th Cir. 1990) (same); *Buxton v. Lynaugh*, 879 F.2d 140, 143-47 (5th Cir. 1989) (same).

Although the Fifth Circuit's prior decisions have characteristically involved cases in which the state habeas judge was the same judge who presided at trial, *see, e.g.*, *May,* 955 F.2d at 314; *Buxton,* 879 F.2d at 146, the Fifth Circuit has not held that this is necessary to presume the factual findings correct.  *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997), *cert. denied,* 523 U.S. 1099 (1998).  To the contrary, the Fifth Circuit has recognized that "it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim." *May*, 955 F.2d at 312.  The record in this case shows that the facts were adequately developed and presented to the state habeas court.  With the affidavit of defense counsel, the state habeas court was able to resolve the issues Bartie raised.

This court affords the state court's factual findings a presumption of correctness.  28 U.S.C. § 2254(d)(2).

### A.    The Claim of Counsel's Failure to Investigate Criminal History

Bartie complains that his trial counsel failed to investigate his criminal history before trial.  On July 20, 1987, Bartie was convicted of attempted murder.[1]  On March 14, 1989, Bartie was convicted of attempted manslaughter.[2]  Bartie alleges that counsel did not know that the convictions could not be used for enhancement purposes.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 8B).  Bartie argues that the Dallas conviction had been overturned on direct review.

The record shows that Bartie was initially convicted in Cause Number F-84-71431-NV on May 2, 1984.  (Reporter's Record, Vol. VII, Ex. 34).  This court's online research reveals that on February 19, 1985, the Fifth Court of Appeals of Texas reversed the conviction and remanded.  The record shows that Bartie entered a guilty plea in Cause Number F-84-71431-NV on July 20, 1987 and received a six-year prison sentence.  Bartie had been erroneously released in August 1985 and taken back into custody in June 1987.  Bartie explains that he was told by his counsel that he

---

[1]  Cause Number F-84-71431-NV, in the 292nd Judicial District Court of Dallas County, Texas.

[2]  The conviction was imposed in the 33rd Judicial District Court of Allen Parish, Louisiana. The cause number of the abandoned enhancement paragraph in the indictment is not completely legible.

would not receive credit for the time he was erroneously released.  Bartie alleges that although he pleaded guilty, it was involuntary.

Bartie's trial counsel in the case at issue in this habeas petition submitted an affidavit to the state habeas court.  The affidavit included the following statements:

> During the punishment phase of the trial the State introduced a prior conviction of attempted murder out of Dallas.  Mr. Bartie plead not true; but the State established that the conviction was a final conviction.  The State also introduced a prior case where Mr. Bartie had shot another young man.  Detective David N. Thomas a (sic) was a ten year veteran in (sic) police department of Lake Charles, Louisiana.  Mr. Bartie shot him with a shotgun and disabled him for life.
>
> Despite the facts that Mr. Bartie plead not true to the enhancement paragraph, he understood that a final conviction could be used for enhancement purposes. My investigation showed that the conviction used was a final conviction, Mr. Bartie also was aware that the State could use the assault in Louisiana during the punishment phase of his trial.

*Ex parte Bartie*, Application No. 50,777-05, pp. 37-38.

Bartie appears to allege that his trial counsel should have known that the Louisiana conviction could not be used for enhancement purposes.  The record shows that the Louisiana conviction was not offered for enhancement.  Although the indictment contained two enhancement paragraphs, one from Dallas County and one from Allen Parish in Louisiana, the paragraph relating to the Allen Parish conviction

was crossed out, indicating that it was withdrawn.  *Ex parte Bartie*, Application No. 50,777-05 at 58.  The evidence as to the shooting involved in the Louisiana case was presented during the punishment phase of the 2001 trial.[3]  Detective David Neal Thomas testified that Bartie had shot him twice on June 6, 1987.  Thomas testified that he found Bartie, a stranger, sitting at his kitchen table.  When Thomas asked Bartie to leave, Bartie shot Thomas in the abdomen.  When Thomas's girlfriend tried to drive him to the hospital, Bartie stopped the car, threatened to kill Thomas's girlfriend, ordered Thomas and his girlfriend to lay on the ground, and shot Thomas in the leg. Thomas, who was seventeen at the time, sustained permanent injuries to his kidney and leg.  (Reporter's Record, Vol. IV, pp. 5-13).

---

[3]  To prevent an accused from being prosecuted for some collateral crime or misconduct, the State may not introduce evidence of extraneous offenses similar to the offense charged. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex. Crim. App. 1990).  However, as an exception to the general rule of exclusion, evidence of "other crimes, wrongs, or acts" may be admissible if it has relevance to a material issue other than to show that the accused acted in conformity with some trait of character and the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice." *Montgomery,* 810 S.W.2d at 387; Tex. R. Evid. 403, 404(b).  If the defendant objects on the grounds that the evidence is not relevant to a material issue, or that the evidence violates Rule 404(b), or that the evidence constitutes an otherwise inadmissible extraneous offense, the State must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value. *Montgomery,* 810 S.W.2d at 387.

Extraneous offense evidence is relevant apart from showing character conformity if the proponent shows that it "tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, *e.g.*, absence of mistake or accident . . . [or] that it is relevant upon a logical inference not anticipated by the rulemakers." *Montgomery,* 810 S.W.2d at 387-388.  State law expressly provides that evidence of a defendant's prior criminal record is admissible during the punishment phase of trial.  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3 (Vernon Supp. 2004).

Bartie claims that counsel failed to investigate the Dallas conviction, which he asserts was void.  To establish his failure to investigate claim, Bartie must allege with specificity what a proper investigation would have revealed and how it would have benefitted him.  *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989)).  He must also show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

The affidavit from Bartie's counsel states that he investigated and determined that the Dallas conviction was valid and could be used for enhancement purposes. Bartie does not explain how additional investigation should have been conducted or how an this additional investigation would have changed the outcome of the trial. Bartie does not explain how the underlying conviction in the Dallas case remained open to collateral attack after the sentence had been discharged.  *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001).  The record shows that Bartie's counsel was familiar with the facts of the aggravated assault as well as the facts of Bartie's prior convictions.  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983).

In addition to failing to show that his counsel's performance was deficient, Bartie has failed to show prejudice. In the "non-capital sentencing context, . . . a court must determine whether there is a reasonable probability that but for trial counsel's error the defendant's non-capital sentence would have been significantly less harsh. *Spriggs v. Collins*, 993 F.2d 85 (5th Cir. 1993).[4] In deciding whether such prejudice occurred, a court should consider a number of factors, including: the amount of the sentence imposed on the defendant by the sentencing judge or jury; the minimum and maximum sentences possible under the relevant statute or sentencing guidelines; the relative placement of the sentence actually imposed within that range; and the various relevant mitigating and aggravating factors that were properly considered by the sentencer. 993 F.2d at 87.

In this case, the facts properly considered by the jury included the nature of Bartie's conduct. Bartie went to his mother-in-law's home and shot her daughter, Sandra Bartie, five times. Bartie ignored his mother-in-law's pleas not to shoot. Bartie received a sixty-year prison term; the statute provided a range from five years to ninety-nine years. Bartie has not shown "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly

---

[4] *Glover v. United States*, 531 U.S. 198 (2001) created a different standard for sentences under the federal sentencing guidelines. The Fifth Circuit in *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), explicitly declined to overrule *Spriggs* in the context of state sentencing. *Grammas*, 376 F.3d at 438 n.4.

less harsh." *Id*. at 88; *see also United States v. Stewart,* 207 F.3d 750, 751 (5th Cir.

2000).

Bartie is not entitled to relief on this claim.

## B.   The Claim of the Failure to Object to Prosecutor's Improper Comment

Bartie complains that his trial counsel failed to object to the prosecutor's

comment on postarrest silence.  Bartie asserts that the prosecutor posed questions

concerning motive that only Bartie could answer.  Bartie argues that the prosecutor's

comments could not be construed as a response to defense counsel's arguments,

because defense counsel did not  question why Sandra Bartie was shot or why Bartie

went to Livingston.  (Docket Entry No. 11, Petitioner's Response, p. 4).

Bartie's counsel made the following statement during his closing argument:

> Ms. Holman, the last witness who testified, said he said he
> shot her.  I ask a question.  Let's say Ms. Holman is correct.
> Why would you drive to someone's home and say you shot
> your wife.  Is that the act of a cold hearted killer?  Or is that
> the act of somebody remorseful about something bad that
> happened.  Why is it that the story seems to be evolving --
> evolving -- evolving, and what's missing? What's missing?
> Why is it that the brother who was there in the room when
> the shooting took place, why is it that he is not storming the
> door down to get at Eddie Bartie?  Why is it that Ms.
> Chatman even looked at Eddie Bartie.  She didn't look at
> him with hatred and anger, and I want this man just fried.
> What story has not been told?

(Reporter's Record, Vol. III, p. 71).

Counsel also said:

> But I want you to think of everything that happened.  Now,
> the prosecutor is real eloquent.  She is a great speaker, and
> she's going to probably run Mr. Bartie down.  Oh, this
> happened, this happened.  But I want you, when you go
> back, one of you at least, to think about the totality of what
> you heard, the totality of it.  What's missing?  What's
> missing about this whole case?

(Reporter's Record, Vol. III, p. 72).

In her rebuttal, the prosecutor responded by making the following statement:

> We will never know why Sandra Bartie got shot on August
> 18, 1999.  We will never know why Eddie Bartie decided
> to drive to Livingston and spill his guts to a friend of the
> family's.  We will never know.  But what you do know are
> some very clear, very direct facts. . . .

> We don't know where Eddie Bartie was going, and we will
> never really know why he did what he did.  But none of that
> matters.  We know that he deliberately shot his wife six
> times. . . .

> The Defense tried to talk about remorse, that his
> conversation with her [Ms. Holman] showed remorse.  Yet,
> the defendant, himself, told Leslie Holman, I didn't call the
> police, I just left.

(Reporter's Record, Vol. III, pp. 72-74).

Bartie's trial counsel submitted an affidavit to the state habeas court, in which

he stated that:

> I did not object to the prosecutor's final arguments. It was
> clear from the evidence that Mr. Bartie had indeed shot his
> wife. There was an eyewitness; his mother-in-law who
> pleaded with him to stop shooting her daughter.  There was

the confession he gave to Ms. Holman, that he had shot his wife. I did not object to the prosecutor's statement because I had set up a punishment argument for remorse for Mr. Bartie in my final argument. I was not naive enough to feel that a jury would not believe eyewitnesses to the shooting and a confession that he gave to Ms. Holman. I would have insulted the intelligence of the jury to argue otherwise. My strategy was to establish that there was some underlying reason and deep remorse for Mr. Bartie's actions, that he was deeply in love with his wife and he did not know why he shot his wife but he was deeply pained by his actions. So when the prosecutor stated we do not know why Mr. Bartie shot his wife, I did not object because I had established the premise for that question. She was not referring to Mr. Bartie asserting his fifth amendment rights.

*Ex parte Bartie*, Application No. 50,777-05, pp. 37-38.

The Fifth Amendment prohibits a prosecutor from commenting either directly or indirectly on a defendant's failure to testify. *See United States v. Mackay*, 33 F.3d 489, 495 (5th Cir. 1994). In determining whether a prosecutor has made such a comment, a court considers: 1) whether the prosecutor's manifest intent was to comment on the defendant's silence; or 2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. *Id.* If there is an "equally plausible explanation for the remark," the prosecutor's intent is not manifest. *United States v. Green*, 324 F.3d 375 (5th Cir. 2003) (citing *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996)).

As the Fifth Circuit has noted, "[a] prosecutor's improper [conduct] will, in itself, exceed constitutional limitations in only the most egregious cases." *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987).   "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181; *see Dowthitt*, 230 F.3d at 755.  The Fifth Circuit has set out a two-step analysis for reviewing an assertion of prosecutorial misconduct.  *See United States v. Wise*, 221 F.3d 140, 152 (5th Cir.), *petition for cert. filed* (Dec. 4, 2000) (No. 00-7342); *United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999), *cert. denied*, 529 U.S. 1119 (2000).  The first step is to determine whether the prosecutor made an improper remark. *See United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999), *cert. denied*, 528 U.S. 1127 (2000).   In deciding whether remarks made or questions asked by a prosecutor were improper, it is necessary to view them in context.  *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987); *Wise*, 221 F.3d at 152; *Barrientes*, 221 F.3d at 780.  "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant [ ]." *Wise*, 221 F.3d at 152.  In determining whether the prosecutor's remarks prejudiced the defendant's substantive rights, the court assesses the magnitude of the statement's prejudice, the effect of any cautionary instructions given, and the strength of the evidence of the defendant's guilt.  *Gallardo-Trapero*, 185 F.3d at 320.

In Texas, there are four areas in which jury argument is proper: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *See Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999); *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).   Reviewing the prosecutor's comments in the context in which they were stated, this court concludes that the comments did not refer to Bartie's failure to testify.  *See United States v. Virgen-Moreno,* 265 F.3d 276, 293 (5th Cir. 2001) (holding that the prosecutor did not reference the defendant's failure to testify where the statement was made in response to a comment made by the defense).   The prosecutor's comments responded to the defense argument that Bartie felt remorse for shooting his wife.   Bartie has not shown that the prosecutor manifestly intended to comment on his choice not to testify or that the jury necessarily would view the prosecutor's comments in that light.  *See United States v. Johnston,* 127 F.3d 380, 396 (5th Cir. 1997).   This court finds that no reasonable jury would infer that the prosecutor was treading upon Bartie's right to remain silent.

Even assuming that the argument was a comment on Bartie's failure to testify, reversal is not warranted unless the improper comment had a "clear effect on the jury." *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1179 (5th Cir. 1993).   Curative instructions are considered in analyzing whether an improper remark constitutes

reversible error.  *See United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1237 (5th Cir. 1990).

In its charge to the jury, the trial court admonished the jury that if a defendant elects not to testify, that fact cannot be used against him.  (Clerk's Record, Vol. I, p. 89).  Juries are presumed to follow the court's instructions.  *See Zafiro v. United States*, 506 U.S. 534, 540-41 (1993).  Additionally, the evidence of Bartie's guilt was overwhelming.  Even if the prosecutor's comments were improper, Bartie has not shown that the remarks affected his substantial rights.  Bartie has not shown that the state court's denial of relief on this issue was contrary to clearly established federal law or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409 (2000); *Beazley v. Johnson*, 242 F.3d 248, 255 (5th Cir. 2001).

In a related claim, Bartie argues that his counsel's trial strategy of focusing on remorse amounted to a concession of guilt.  Judicial scrutiny of counsel's performance must be highly deferential.  *Strickland v. Washington*, 466 U.S. at 689.  Counsel's "conscious and informed decision on trial tactics and strategy" is not a permissible basis for a claim of ineffective assistance of counsel unless the strategy was so poor that it robbed the defendant of any opportunity to get a fair trial.  *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (citation omitted).  So long as counsel made an

"adequate investigation," any strategic decisions made as a result of that investigation "fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson,* 194 F.3d 586, 591-92 (5th Cir. 1999).

Counsel explained that to challenge the eyewitness's testimony and the evidence of Bartie's confession would have insulted the jury's intelligence. Instead, counsel argued that there was an underlying reason for Bartie's conduct, and that he was remorseful. During his cross-examination of witnesses, counsel suggested that Sandra Bartie had a boyfriend and that Bartie felt remorse for his crime. In his closing, counsel argued that Bartie truly loved his wife and she him. Counsel tried to show that Bartie's mother-in-law also cared about him. Counsel's strategy was to show that Bartie was loved and that he should be acquitted so he could return to his family.

In *Nixon v. Epps*, 405 F.3d 318, 327 (5th Cir. 2005), the Fifth Circuit considered and rejected Nixon's challenge to his counsel's closing argument at sentencing. The Fifth Circuit observed that counsel's simple, sincere request for sympathy and appeal to the jury's sense of religious compassion was in keeping with counsel's strategic decision to plead for their client's life rather than attempt to reargue the facts of the case they had just lost. The Fifth Circuit determined that this strategy, while ultimately unsuccessful, was a reasonable choice given the facts of the case and

the age of their client.  Defense counsel was merely acknowledging the jury's verdict and asking for mercy.  *See Stamps v. Rees*, 834 F.2d 1269, 1275 (6th Cir. 1987); *see also Florida v. Nixon*, 534 U.S. ----, 125 S. Ct. 551 (2004) (rejecting a claim of ineffective assistance where defense counsel strategically chose to concede guilt during trial and focus on begging for his client's life).

In a similar case in which defense counsel gave an extremely brief closing argument and mentioned no mitigating evidence, the Fifth Circuit observed the following:

> Given his difficult situation, we are not prepared to fault [trial counsel's] effort to highlight the heavy responsibility of the jury by not burdening them with the obvious and avoiding the risk of losing them by arguing the absurd.  To do so comes close to insisting on a pro forma argument in every case.  Had the jury returned a life sentence the strategy might well have been seen as a brilliant move.  That it did not does not mean that it was outside the range of reasonable professional assistance.

*Romero v. Lynaugh,* 884 F.2d 871, 877 (5th Cir. 1989).  In another case, the Fifth Circuit found no prejudice based on defense counsel's choice to give no closing argument.  *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986).

Based on his knowledge of the facts and law, counsel made a reasoned strategic choice to argue that Bartie felt remorse for his actions.  While ultimately unsuccessful, it was a reasonable choice, given the evidence of Bartie's guilt.

Bartie is not entitled to habeas relief on this claim.

## C.    The Claim of Failure to Object to Use of Hypotheticals

Bartie alleges that counsel failed to object to the prosecutor's use of hypothetical situations during voir dire.  Bartie complains that the hypothetical situations were very similar to the actual facts of the case.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 8A).

In the affidavit Bartie's trial counsel submitted to the state habeas court, he stated:

> 3.  I did not object to the State using hypotheticals in voir dire to illustrate rules of law or to challenge bias or prejudice feelings toward the rules of law.  The State as well as the defense are legally entitled to do so.

*Ex parte Bartie*, Application No. 50,777-05, p. 38.

Under Texas law, when conducting voir dire, "it is proper to pose hypothetical fact situations to explain the application of the law, [but] it is improper to inquire how a veniremember would respond to particular circumstances."  *Penry v. State*, 903 S.W.2d 715, 740 (Tex. Crim. App. 1995)(citing *Cuevas v. State*, 742 S.W.2d 331, 336 n.6 (Tex. Crim. App. 1987)).  In application, this means that "[a] proper [voir dire] question is one which seeks to discover a veniremember's views on an issue applicable to the case."  *Rhoades v. Texas*, 934 S.W.2d 113, 122 (Tex. Crim. App. 1996).  In contrast, an improper voir dire question "attempts to commit a veniremember to a

24

particular resolution based upon facts peculiar to the trial." *Id*. It is improper to ask a prospective juror whether he would find good conduct in prison to be a mitigating factor, rather than whether he could find good conduct to be a mitigating factor. *See id.* at 123.

In *Green v. Johnson*, 160 F.3d 1029, 1036 (5th Cir. 1998), the petitioner argued that his counsel failed to object when the prosecution asked hypothetical questions using facts similar to his case in order to obtain commitments from prospective jurors regarding his guilt. The Fifth Circuit reviewed the record and found that the prosecution did not ask prospective jurors hypothetical questions based on the specific facts of the case that would "commit" them to find the defendant guilty. Rather, the prosecution properly limited itself to hypothetical questions about the application of general legal issues that would be involved in the case. Specifically, the prosecution asked whether a juror could convict for capital murder if (i) the predicate felony was unsuccessful (*e.g.*, murder in the course of an unsuccessful burglary) or (ii) a defendant aided and abetted. The Fifth Circuit found that the prosecution's statement of Texas law was substantially correct and that the jurors were asked general hypothetical questions, not specific questions using the facts from the case.

The record in this case shows that during voir dire, the prosecutor told the venire panel that she could not talk about the particular facts of the case. (Reporter's

Record, Vol. II, p. 27).  She said that she could only talk about the law and what was stated on the indictment, and could only talk about generalities, not the specific facts. (*Id*.).  The prosecutor explained that there were different ways for a prosecutor to prove a case.  She explained that one way is for an eyewitness to come and describe what Mr. X did to Mrs. Y, but that there were reasons a complainant may be unable or unwilling to testify.  (Reporter's Record, Vol. II, p. 33).  The prosecutor explained that in a case of aggravated assault, the range of punishment was two to twenty years of imprisonment.  (Reporter's Record, Vol. II, p. 35).  The prosecutor explained that if a person was previously convicted of a felony offense, the punishment range changed to five to ninety-nine years or life and a fine of $10,000.  The prosecutor asked if the members of the venire panel could consider the full range of punishment in the event the prosecutor proved the defendant was previously convicted of a felony offense.  (*Id*. at 36-37).  A veniremember asked if the case involved a sentence of five to ninety-nine years.  The prosecutor explained that she was speaking hypothetically, not about the facts in the case.  (*Id*. at 37).

The venire panel were asked general hypothetical questions.  The prosecution's hypothetical questions were not the basis for a valid objection.  Because failure to make a frivolous objection does not cause counsel's performance to fall below an

objective level of reasonableness, *see Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), Bartie has not established deficient performance. *Green*, 160 F.3d at 1037.

Bartie contends that his counsel was ineffective by failing to preserve his asserted errors for appellate review. This conclusory claim fails to raise a constitutional issue. Bartie has not demonstrated that he had grounds for appeal that would have been meritorious if preserved. Having independently reviewed each of Bartie's claims raised in state court in conjunction with the state court records, and assuming the Texas Court of Criminal Appeals applied *Strickland* in denying relief, it appears the state court's adjudication of Bartie's ineffective assistance claims was reasonable.

Bartie is not entitled to relief on this claim.

## IV.   The Claims Based on a Challenge to the 1987 Conviction

In grounds two and three, Bartie challenges his 1987 conviction in Cause Number F-84-71431-NV. Respondent first argues that these claims are procedurally barred because Bartie did not raise them in his state habeas application. A review of the state application reveals that Bartie complained of counsel's ineffective assistance and the involuntary nature of his guilty plea in Cause Number F-84-71431-NV. *Ex parte Bartie*, Application No. 50,777-05 at 18. These claims do not, however, provide a basis for habeas corpus relief.

Under *Lackawanna County District Attorney v. Coss,* 532 U.S. 394, 403 (2001),

Bartie's 1987 conviction is "conclusively valid."  The Supreme Court held:

> [O]nce a state conviction is no longer open to direct or
> collateral attack in its own right because the defendant
> failed to pursue those remedies while they were available
> (or because the defendant did so unsuccessfully), the
> conviction may be regarded as conclusively valid.  *See
> Daniels [v. United States,* 523 U.S. 374, ___, 121 S. Ct.
> 1578, 1583 (2001)].  If that conviction is later used to
> enhance a criminal sentence, the defendant generally may
> not challenge the enhanced sentence through a petition
> under § 2254 on the ground that the prior conviction was
> unconstitutionally obtained.

*Id*. at 403-04.  The record shows that Bartie received a six-year sentence in Cause

Number F-84-71431-NV.  This court has confirmed through telephone inquiry to the

TDCJ-CID that Bartie has discharged this sentence.  Because Bartie has discharged

this sentence, the 1987 conviction is no longer open to direct or collateral attack in its

own right.

The Supreme Court recognized an exception to the general rule announced in

*Lackawanna* when the petitioner challenges "an enhanced sentence on the basis that

the prior conviction used to enhance the sentence was obtained where there was a

failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon*

*v. Wainwright,* 372 U.S. 335 (1963)."  *Lackawanna County District Attorney,* 531

U.S. 404.  Bartie was represented by counsel at his guilty plea.  Because Bartie does

not allege that there was a failure to appoint counsel in violation of *Gideon,* he has no basis on which to challenge the 1987 conviction.

## V.     Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 7), is GRANTED.  Bartie's petition for a writ of habeas corpus is DENIED.  This case is DISMISSED.  Any remaining pending motions are DENIED as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision.  28 U.S.C. § 2253(c)(1).  This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. As the Supreme Court made clear in its recent decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."  When considering a request for a COA, "[t]he question is the

debatability of the underlying constitutional claim, not the resolution of that debate."

*Id.* at 1042. Because Bartie has not made the necessary showing, this court will not

issue a COA.

SIGNED on July 1, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge